# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| ANTONNETTE A. HOPKINS, *individually and on behalf of all others similarly situated*, | Civil No. 12-1943 (JRT/JJG) |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |
| v. | |
| THE CITY OF BLOOMINGTON, | |
| Defendant. | |

A. L. Brown, **CAPITOL CITY LAW GROUP, LLC**, 155 South Wabasha, Suite 125, St. Paul, MN 55107, for plaintiff.

Jon K. Iverson and Amanda L. Stubson, **IVERSON REUVERS CONDON**, 9321 Ensign Avenue South, Bloomington, MN 55438, for defendant.

This case arises out of the seizure of Plaintiff Antonnette Hopkins' vehicle after her arrest for driving under the influence. The City of Bloomington ("the City") seized and impounded her vehicle pursuant to Minnesota's vehicle forfeiture statute, Minn. Stat. § 169A.63. Hopkins was charged with one count of second-degree driving while intoxicated, and her vehicle has remained impounded as she awaits the conclusion of her criminal proceedings.

Hopkins brings claims under 42 U.S.C. § 1983 alleging that the City's seizure and retention of her vehicle violated her constitutional right to due process under the Fourteenth Amendment and right to be free from unreasonable seizures under the Fourth Amendment. Hopkins also brings claims alleging identical violations under the

Minnesota Constitution.  The City moves to dismiss these claims.  Because Hopkins was not entitled to predeprivation process under the circumstances and Hopkins has failed to exhaust her state postdeprivation remedies, the Court will dismiss Hopkins' due process claim.  Additionally, the Court will dismiss Hopkins' Fourth Amendment claim because the City's prolonged retention of Hopkins' vehicle does not implicate the Fourth Amendment.  Finally, the Court will dismiss Hopkins' claims under the Minnesota Constitution for failure to state a claim.

## BACKGROUND[1]

### I.   HOPKINS' CRIMINAL PROCEEDINGS

Shortly after 2:00 a.m. on March 16, 2011, Bloomington Police Officer Nick Sassor initiated a traffic stop after he observed Hopkins driving erratically and speeding. (Compl. ¶ 7, Aug. 8, 2012, Docket No. 1; Aff. of Jon K. Iverson, Ex. A at 2, Jan. 3, 2013, Docket No. 18.)  After performing field sobriety tests and administering a preliminary breath test which indicated a blood alcohol concentration of 0.246, Officer Sassor arrested Hopkins and transported her to the Bloomington Police Department.  (Compl. ¶ 8; Iverson Aff., Ex. A at 2.)  At the police station, Hopkins agreed to submit to another

---

[1] The Court recites the facts assuming the truth of the allegations in the complaint.  *See Turner v. Holbrook*, 278 F.3d 754, 757 (8th Cir. 2002).  Additionally, the facts include references to public documents and other documents which are "embraced by the pleadings" and therefore properly considered on a motion to dismiss.  *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (internal quotation marks omitted).  Although the City has moved in the alternative for summary judgment, the Court finds that summary judgment at this stage of litigation, prior to any discovery is inappropriate.  Because the case can be resolved on a motion to dismiss, the Court does not include any factual allegations in the background section that would result in the motion to dismiss being transformed into a motion for summary judgment.

breath test which revealed a blood alcohol concentration of 0.24.   (Iverson Aff., Ex. A at 2.)   Police searched Hopkins' driving record and found that Hopkins' license had previously been revoked twice as the result of alcohol related driving incidents in November 2000 and December 2005.   (*Id.*)

On March 16, 2011, Hopkins was charged with one count of second-degree driving while intoxicated pursuant to Minn. Stat. §§ 169A.20, subd. 1(5); 169A.25. (Iverson Aff., Ex. A at 3.)   Hopkins made an initial appearance in Hennepin County District Court and was conditionally released after posting bond.   (*Id.*, Ex. D at 2.)

On August 31, 2011, Hopkins brought a motion seeking disclosure of the source code for the model of breathalyzer used in her arrest, or in the alternative the exclusion at trial of all evidence regarding her breath test results.   (*Id.*, Ex. D at 2, Ex. E.)   Hopkins' case was continued, along with thousands of other Minnesota state cases in which defendants challenged the reliability of breathalyzer results due to defects in the source code of the model of breathalyzer used in Hopkins' arrest, pending resolution of the source code issue by the Minnesota Supreme Court.   (*Id.*, Ex. E.)   On June 27, 2012, the Minnesota Supreme Court ruled that the challenged breathalyzer was reliable when measuring breath alcohol concentration.   *In re Source Code Evidentiary Hearings in Implied Consent Matters*, 816 N.W.2d 525 (Minn. 2012).   The court also held that the challenging defendants could not present evidence of the alleged source code defects in their individual trials and hearings.   *Id.* at 540-42.   Following the Minnesota Supreme

Court's ruling, Hopkins' criminal case proceeded and a jury trial was scheduled for February 6, 2013.  (Iverson Aff., Ex. D at 3.)[2]

## II.    SEIZURE OF HOPKINS' VEHICLE

Hopkins is the registered owner of the 2007 Infiniti QX56 ("the Vehicle") that she was driving at the time of her March 16, 2011 arrest.  (Compl. ¶ 6.)  Bloomington police had the vehicle towed from the scene of the arrest without a judicial order and the vehicle was impounded at a City facility.  (*Id.* ¶¶ 9-10, 12.)  The Vehicle has been in the City's possession since Hopkins' arrest.  (*Id.* ¶ 15.)  After her arrest, Hopkins was given a notice and order of license revocation, license plate impoundment, and a notice of seizure and intent to forfeit her vehicle.  (*Id.* ¶ 9; Iverson Aff., Ex. C at 5.)

On March 30, 2011, while the source code issue was pending before the Minnesota Supreme Court, Hopkins filed a Demand for Judicial Determination ("the Demand") challenging the forfeiture of her vehicle.  (Iverson Aff., Ex. G.)  In the Demand, Hopkins challenged numerous aspects of the forfeiture including the legality of her arrest, the validity of her breathalyzer results, the voluntariness of her submission to chemical testing, and the constitutionality of the vehicle forfeiture statute both on its face and as applied.  (*Id.*)  Because the vehicle forfeiture statute provides that a judicial determination regarding a demand "must not precede adjudication in the criminal prosecution of the designated offense without the consent of the prosecuting authority,"

---

[2] Hopkins' attorney indicated at oral argument that Hopkins has since pled guilty to the criminal charges and been sentenced.

and Hopkins had not obtained the prosecutor's consent, no hearing was scheduled regarding Hopkins' Demand.  *See* Minn. Stat. § 169A.63, subd. 9(d).  On September 5, 2012, Hopkins voluntarily withdrew and dismissed her Demand.  (Iverson Aff., Ex. I.) Hopkins' civil case based on the Demand was closed on September 26, 2012.  (*Id.*)

On August 8, 2012, Hopkins filed a complaint with this Court against the City and Hennepin County.[3]  Hopkins alleges that the City's seizure of her vehicle violated the due process clauses of both the Federal and Minnesota Constitution, and also constituted an unreasonable seizure under both constitutions.  (Compl. ¶¶ 38-55.)  Additionally, Hopkins states in her complaint that she "would represent a class of persons who have had their vehicles seized and forfeited by municipal defendants under Minnesota Stat. § 169A.63."  (*Id.* ¶ 29.)

## ANALYSIS

## I.    STANDARD OF REVIEW

In reviewing a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "'claim to relief that is plausible on its face.'"  *See, e.g.*, *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  To survive a motion to dismiss, a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of

---

[3] The parties have since stipulated to the dismissal of Hennepin County.  (Stipulation of Dismissal, Sept. 24, 2012, Docket No. 8; Order, Sept. 26, 2012, Docket No. 11.)

action.'"  *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility," and therefore must be dismissed.  *Id.* (internal quotation marks omitted).  Rule 12(b)(6) also authorizes the Court to dismiss a claim on the basis of a dispositive legal issue. *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

Generally a motion to dismiss under Rule 12(b)(6) must be treated as a motion for summary judgment if "matters outside the pleadings are presented to and not excluded by the court."  Fed. R. Civ. P. 12(d).  Although "matters outside the pleadings may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading."  *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004) (internal quotation marks omitted). Documents embraced by the pleadings include those "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading."  *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003).  For example, "[t]he district court may take judicial notice of public records and may thus consider them on a motion to dismiss."  *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003).

## II.     MINNESOTA'S VEHICLE FORFEITURE STATUTE[4]

Under Minnesota's vehicle forfeiture statute, "[a] motor vehicle is subject to forfeiture . . . if it was used in the commission of a designated offense or was used in conduct resulting in a designated license revocation."   Minn. Stat. § 169A.63, subd. 6. Driving while impaired in violation of Minn. Stat. § 169A.20 is a designated offense under the statute.   *See* Minn. Stat. § 169A.63, subd. 1(e)(1).   Additionally, "[a] vehicle is presumed subject to forfeiture under this section if . . . (1) the driver is convicted of the designated offense upon which the forfeiture is based."   *Id.*, subd. 7(a).

With respect to seizure of a vehicle before any forfeiture proceedings, the statute provides, in relevant part, that "[a] motor vehicle subject to forfeiture under this section may be seized by the appropriate agency upon process issued by any court having jurisdiction over the vehicle."   Minn. Stat. § 169A.63, subd. 2(a).   The statute also provides a number of circumstances where a vehicle "may be seized without process," including where "the seizure is incident to a lawful arrest or a lawful search."   *Id.*, subd. 2(b)(1).   "Any vehicle seized . . . is not subject to replevin, but is deemed to be in the custody of the appropriate agency subject to the orders and decrees of the court having jurisdiction over the forfeiture proceedings."   *Id.*, subd. 3.   The agency may, among other things "remove the vehicle to a place designated by it."   *Id.*, subd. 3(2).

---

[4] The parties agree that the 2010 version of the vehicle forfeiture statute governs this case because Hopkins' vehicle was seized in 2011, prior to the 2012 amendments to the statute. Therefore, all citations to the vehicle forfeiture statute in this Order, unless otherwise noted, reference the 2010 version of the statute.

After an agency has seized a vehicle pursuant to subdivision 2, it must comply with the administrative forfeiture procedures outlined in the statute.  First, upon seizing, "or within a reasonable time after seizure, the appropriate agency shall serve the driver or operator of the vehicle with a notice of the seizure and intent to forfeit the vehicle." *Id.*, subd. 8(b).  The notice must contain a description of the vehicle, the date of seizure, and "notice of the right to obtain judicial review of the forfeiture and of the procedure for obtaining that judicial review." *Id.*, subd. 8(c).  If a claimant does not file a demand for judicial determination of the forfeiture within thirty days following service of a notice of seizure and forfeiture, the claimant loses the right to have a judicial determination of the forfeiture.  *Id.*, subd. 8(c)(3), (d).  To file a demand, a claimant must pay the filing fee (unless it is determined the claimant is unable to afford the fee), and must serve copies on the prosecuting authority having jurisdiction over the forfeiture.  *Id.*, subd. 8(d).

If the claimant files a timely demand, she is entitled to a judicial forfeiture proceeding.  Such proceedings are civil in rem actions, and are "independent of any criminal prosecution." *Id.*, subd. 9(a).  Any such proceedings "must not precede adjudication of the criminal prosecution of the designated offense without the consent of the prosecuting authority.  The district court administrator shall schedule the hearing as soon as practicable after adjudication in the criminal prosecution." *Id.*, subd. 9(d).  In resolving the demand, "[t]here is a presumption that a vehicle seized under this section is subject to forfeiture if the prosecuting authority establishes that the vehicle was used in the commission of a designated offense or designated license revocation." *Id.*, subd. 9(e).  If, however, "the forfeiture is based on the commission of a designated offense and the

person charged with the designated offense appears in court as required and is not convicted of the offense, the court shall order the property returned to the person legally entitled to it upon that person's compliance with the redemption requirements of section 169A.42." *Id.*, subd. 9(f).

If a vehicle has been seized pursuant to subdivision 2 and the owner "seeks possession of the vehicle before the forfeiture action has been determined, the owner may, subject to approval of the appropriate agency, give security or post bond payable to the appropriate agency in an amount equal to the retail value of the seized vehicle." *Id.*, subd. 4.  Once the owner has posted bond "the seized vehicle may be returned to the owner only if a disabling device is attached to the vehicle." *Id.*  The forfeiture action then "proceed[s] against the security as if it were the seized vehicle." *Id.*

Finally, if a vehicle has been administratively forfeited or if the court has made a judicial determination that the vehicle is subject to forfeiture, the appropriate agency may sell the vehicle or keep the vehicle for official use.  *Id.*, subd. 10.

## III.   SECTION 1983 CLAIMS

Hopkins challenges the seizure of her vehicle under the Fourth and Fourteenth Amendments.  Hopkins brings her claims pursuant to 42 U.S.C. § 1983, which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

*Id.*  To maintain a Section 1983 claim, a plaintiff must show "(1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010).  "For there to be section 1983 liability, 'there must first be a violation of the plaintiff's constitutional rights.'" *Avalos v. City of Greenwood*, 382 F.3d 792, 802 (8th Cir. 2004) (quoting *Shrum ex rel. Kelly v. Kluck*, 249 F.3d 773, 777 (8th Cir. 2001)). The Court concludes that even if Hopkins has met the standard for pleading a municipality's liability under § 1983, *see Russell v. Hennepin Cnty.*, 420 F.3d 841, 846 (8th Cir. 2005), Hopkins has failed to allege an actionable violation of her constitutional rights.

### A.   Due Process

The Due Process Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.   "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  "The use of an automobile constitutes a protected property interest" under the Due Process Clause of the Fourteenth Amendment. *Coleman v. Watt*, 40 F.3d 255, 260 (8th Cir. 1994).  To establish a procedural due process violation, Hopkins must prove that she was deprived of "an opportunity . . . granted at a meaningful time and in a meaningful manner for [a] hearing appropriate to the nature of

the case." *Boddie v. Connecticut*, 401 U.S. 371, 378 (1971) (citation and internal quotation marks omitted).

### 1.    Predeprivation Process

Hopkins first argues that she was entitled to notice and an opportunity for a hearing **prior** to the seizure and impounding of her vehicle.  "Due process is a flexible concept . . . and calls only for such procedural protection as the particular situation demands."  *Moore v. Warwick Pub. Sch. Dist. No. 29*, 794 F.2d 322, 327 (8th Cir. 1986). The Supreme Court has explained that

> identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.  "Applying this test, the [Supreme] Court usually has held that the Constitution requires some kind of a hearing **before** the State deprives a person of liberty or property."  *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original); *see also Keatings v. Neb. Public Power Dist.*, 562 F.3d 923, 928 (8th Cir. 2009) ("Generally, where deprivations of property are authorized by an established state procedure due process is held to require predeprivation notice and a hearing in order to serve as a check on the possibility that a wrongful deprivation would occur." (internal quotation marks and alterations omitted)).

Courts have recognized two primary exceptions to requirement of predeprivation notice and a hearing.  "The first exception applies where there is a need for quick action by the State when there is a compelling or overriding state interest in a summary adjudication."  *Keating*, 562 F.3d at 928 (internal quotation marks omitted); *see Mackey v. Montrym*, 443 U.S. 1, 18-19 (1979) (upholding a state statute that allowed for prehearing suspension of a driver's license for refusing to take a breath test upon arrest for operating a motor vehicle while under the influence of alcohol).  "The second exception applies where the deprivation results from a 'random and unauthorized' act by a state actor."  *Keating*, 562 F.3d at 928 (quoting *Parratt v. Taylor*, 451 U.S. 527, 541 (1981))[5].  With respect to the second exception, the Supreme Court has held that in some circumstances "a statutory provision for a postdeprivation hearing, or a common-law tort remedy for erroneous deprivation, satisfies due process."  *Zinermon*, 494 U.S. at 128.  Because Hopkins' vehicle was subject to forfeiture under a state statute, it does not meet the exception for a random and unauthorized act by a state actor.  Therefore, only the first exception is relevant to the Court's analysis in this matter.

Acknowledging that only "'extraordinary situations' . . . justify postponing notice and opportunity for a hearing," *Fuentes v. Shevin*, 407 U.S. 67, 90 (1972) (quoting *Boddie*, 401 U.S. at 379), courts apply a three part test to determine whether the first exception is met.  The extraordinary circumstances for the postponement of a due process hearing are satisfied where

---

[5] The Court has subsequently expanded this exception to insulate "negligent" acts from becoming due process violations. *See Daniels v. Williams*, 474 U.S. 327, 328 (1986).

- 12 -

> [f]irst . . . the seizure has been directly necessary to secure an important
> governmental or general public interest.  Second, there has been a special
> need for very prompt action.  Third, the State has kept strict control over its
> monopoly of legitimate force: the person initiating the seizure has been a
> government official responsible for determining, under the standards of a
> narrowly drawn statute, that it was necessary and justified in the particular
> instance.

*Fuentes*, 407 U.S. at 91; *see also United States v. E-Gold, Ltd.*, 521 F.3d 411, 417 (D.C. Cir. 2008); *United States v. Monsanto*, 924 F.2d 1186, 1192 (2d Cir. 1991).  Accordingly, the Court has determined that "due process is not denied when postponement of notice and hearing is necessary to protect the public" from circumstances such as contaminated food, bank failure, or misbranded drugs, or where necessary to aid the collection of taxes or a war effort.  *See Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 679 (1974) (collecting cases).

Applying this test, the Supreme Court has held that the seizure of a yacht used to transport marijuana without a predeprivation hearing did not violate the yacht owner's right to due process.  *See id.* at 679-80.  In *Calero-Toledo*, Puerto Rican authorities discovered marijuana on board a yacht and charged one of the yacht's lessees with violation of the Controlled Substances Act of Puerto Rico.  *Id.* at 665.  Without prior notice to either of the yacht's lessees or lessor, or an adversarial hearing, the authorities seized the yacht pursuant to a Puerto Rican statute which provided that "vessels used to transport, or to facilitate the transportation of, controlled substances . . . are subject to seizure and forfeiture to the Commonwealth of Puerto Rico."  *Id.* at 665-66.  The lessees were given notice within ten days of the seizure.  *Id.* at 667-68.  Because the lessees did not challenge the seizure within fifteen days of service of the notice, the yacht was

forfeited for official use of the Puerto Rican government. *Id.* at 668. The lessor then challenged the forfeiture on due process grounds. *Id.*

The Court began by explaining that "*Fuentes* reaffirmed . . . that in limited circumstances, immediate seizure of a property interest, without an opportunity for prior hearing, is constitutionally permissible," and set forth the three *Fuentes* considerations. *Id.* at 677-78. The Court then concluded that, under *Fuentes*, the yacht's seizure without predeprivation notice and hearing was constitutionally permissible. *Id.* at 679. With respect to the first *Fuentes* consideration, the Court found that "seizure under the Puerto Rican statutes serves significant governmental purposes: Seizure permits Puerto Rico to assert in rem jurisdiction over the property in order to conduct forfeiture proceedings, thereby fostering the public interest in preventing continued illicit use of the property and enforcing criminal sanctions." *Id.* The Court also found that the nature of the yacht required prompt action because "preseizure notice and hearing might frustrate the interests served by the statutes, since the property seized – as here, a yacht – will often be of a sort that could be removed to another jurisdiction, destroyed, or concealed, if advance warning of confiscation were given." *Id.* Finally, the Court concluded that "seizure is not initiated by self-interested private parties; rather, Commonwealth officials determine whether seizure is appropriate under the provisions of the Puerto Rican statutes." *Id.* Therefore, the Court held that the circumstances of the yacht's seizure presented an "'extraordinary' situation in which postponement of notice and hearing until after seizure did not deny due process." *Id.* at 679-80. After *Calero-Toledo*, when the government seizes items subject to forfeiture pursuant to a statute, predeprivation process

is typically not required. *See, e.g.*, *United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in U.S. Currency*, 461 U.S. 555, 562 n.12 (1983).

Following this analysis, multiple courts have held that it is not a violation of procedural due process for vehicles subject to forfeiture to be seized without preseizure notice or opportunity for a hearing. *See United States v. One 1977 Mercedes Benz, 450 SEL, VIN 11603302064538*, 708 F.2d 444, 450 n.5 (9th Cir. 1983) ("[D]ue process does not require that pre-seizure notice or opportunity to be heard be given the owner of a vehicle subject to forfeiture." (citing *Calero-Toledo*, 416 U.S. at 679)); *see also Ross v. Duggan*, 402 F.3d 575, 584 (6th Cir. 2004) ("At bottom, pre-seizure hearings are not constitutionally mandated, as long as interested persons receive notice and a timely post-seizure opportunity to be heard prior to forfeiture." (emphases omitted)).  In analyzing a vehicle forfeiture statute very similar to Minnesota's under the *Fuentes* framework, the New York Court of Appeals explained that:

> In the context of lawful arrests for driving while intoxicated, immediate seizure by the police of a defendant's car – the instrumentality of the crime of drunk driving – helps to secure important public and governmental interests in ensuring both safety on the roads and the enforceability of any subsequent forfeiture order.  Here, inasmuch as she had been arrested for driving while intoxicated, defendant was both legally and physically incapable of driving.  No one else was present with her in the car.  In addition, an immediate seizure of the automobile – which could easily be removed to another jurisdiction, destroyed or concealed – was necessary to enable the County to assert jurisdiction over it in anticipation of a later forfeiture proceeding.  A pre-seizure hearing was therefore not required.

*Cnty. of Nassau v. Canavan*, 802 N.E.2d 616, 623 (N.Y. 2003).

Applying Supreme Court precedent and the reasoning of other courts, the Court concludes that to the extent Hopkins' due process claim is based on the lack of

predeprivation process, it fails as a matter of law.[6]  With respect to the first *Fuentes* consideration, the rationale for the City's action closely tracks that which the Supreme Court relied upon in *Calero-Toledo*.  *See* 416 U.S. at 679.  Seizure of Hopkins' vehicle allowed the City to assert in rem jurisdiction over the Vehicle in order to conduct forfeiture proceedings, thereby fostering the public interest in preventing continued illicit use of the Vehicle and enforcing criminal sanctions against Hopkins.   Furthermore, immediate seizure served the government interest of removing Hopkins, an incapacitated driver, from the public roadways.  *See Canavan*, 802 N.E.2d at 623.  The second *Fuentes* consideration – the need for prompt action – is also satisfied in the present case.  Cars – like yachts – are readily mobile, and immediate seizure was therefore necessary to prevent the possible removal, destruction, or concealment of the Vehicle.  Finally, Officer Sassor, a government official, initiated the seizure pursuant to standards set forth in a statute, after having determined that seizure was necessary and justified in the context of Hopkins' arrest.   Because preseizure hearing and notice are not required to satisfy procedural due process in the context of vehicle forfeiture following an arrest for drunk driving, the Court will dismiss Hopkins' claim to the extent it is based upon lack of predeprivation due process for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

---

[6] Notably, this case does not raise the potentially more complicated question of whether preseizure notice or a hearing may be required where an innocent owner's property interests are implicated by a possible forfeiture.  *See, e.g.*, *Krimstock v. Kelly*, 306 F.3d 40, 56-58 (2d Cir. 2002).  It is undisputed that Hopkins is the owner of the vehicle she was driving at the time of the alleged driving offense.

## 2.    Postdeprivation Process

Hopkins makes numerous claims about the inadequacy of the postdeprivation process provided by the Minnesota forfeiture statute.  For example, Hopkins argues that the thirty-day statute of limitations, the filing fee, and the service requirements violate her right to due process.  Furthermore, Hopkins challenges the delay in receiving postseizure judicial review of the City's retention of her Vehicle, which, absent prosecutorial consent, cannot proceed until the underlying driving offense has been prosecuted.[7]

Generally, a plaintiff is not required to exhaust state remedies before bringing a Section 1983 claim.  *See Patsy v. Bd. of Regent of Fla.*, 457 U.S. 496, 516 (1982).  But "[u]nder federal law, a litigant asserting a deprivation of procedural due process must exhaust state remedies before such an allegation states a claim under § 1983." *Wax 'n Works v. City of St. Paul*, 213 F.3d 1016, 1019 (8th Cir. 2000).  Where a litigant has failed to exhaust available state remedies a procedural due process claim brought under § 1983 is not ripe for adjudication.  *Id.* at 1020; *see also Crooks v. Lynch*, 557 F.3d 846, 848 (8th Cir. 2009).[8]

---

[7] The provision allowing judicial review to proceed prior to the conclusion of criminal proceeds with prosecutorial consent has since been removed from the statute.  *See* Minn. Stat. § 169A.63 (2012).

[8] The need to exhaust state remedies applies only to challenges to the adequacy or availability of postdeprivation remedies.  *See Keating*, 562 F.3d at 929.  It therefore "is not necessary for a litigant to have exhausted available **postdeprivation** remedies when the litigant contends that he was entitled to **predeprivation** process." *Id.* (emphasis in original).  It is for this reason that the Court considered Hopkins' arguments regarding the necessity of predeprivation process on the merits, but will dismiss her due process claim to the extent it relies upon the inadequacy of postdeprivation process for failure to exhaust.

Here, Hopkins initially attempted to take advantage of the vehicle forfeiture statute's postdeprivation process by filing her Demand in state court. Hopkins' Demand challenged the forfeiture of her vehicle as well as the constitutionality of the statute more generally. But before the state court made any determination, Hopkins voluntarily dismissed her Demand, perhaps because she was pursuing this federal action. Because Hopkins has not exhausted her available postdeprivation remedies, she cannot challenge the adequacy or availability of those remedies in this Section 1983 action.[9] Therefore, the Court will dismiss Hopkins' procedural due process claim to the extent it seeks to challenge any postdeprivation process without prejudice, as these claims were not properly exhausted. *See Crooks*, 557 F.3d at 849 (dismissing plaintiff's unexhausted

---

[9] The Court notes that a situation could arise in which a state's postdeprivation remedies were so delayed that a court could conclude that a state effectively provides no postdeprivation remedies, and therefore that a plaintiff need not exhaust them. If, for example, a forfeiture hearing was not available for several years, it might be unreasonable to require a plaintiff to exhaust those remedies prior to bringing a § 1983 claim. *Cf.* 28 U.S.C. § 2254(b)(1)(B)(i) (forgiving the exhaustion requirement under the federal habeas statute if "there is an absence of available State corrective process" or where "circumstances exist that render such process ineffective to protect the rights of the applicant"); *Portela-Gonzalez v. Sec'y of the Navy*, 109 F.3d 74, 77 (1st Cir. 1997) (explaining that a court may relax the requirement of exhausting administrative remedies "when unreasonable or indefinite delay" in obtaining those administrative remedies "threatens unduly to prejudice the subsequent bringing of a judicial action"). This case does not present those facts, and therefore the Court need not consider this potentially difficult legal question. Here, although the state courts made no determination on Hopkins' demand for over fifteen months, this was because of the unique circumstance of Hopkins' criminal case being continued pending an appeal of an evidentiary issue to the Minnesota Supreme Court. Although a long delay could potentially implicate due process, the Court does not find that the state was effectively providing no postdeprivation remedies in the present case, such that the Court could overlook Hopkins' failure to exhaust those remedies.

procedural due process claims without prejudice because a dismissal for lack of jurisdiction over the unripe claims "is not an adjudication on the merits").[10]

Although Hopkins acknowledges that she has not exhausted her postdeprivation remedies, she appears to argue that the inadequacy of postdeprivation remedies rendered the unavailability of predeprivation remedies unconstitutional. This argument conflates the two due process inquiries, and is inconsistent with Eighth Circuit precedent holding that "when an established state procedure or a foreseeable consequence of such a procedure causes the loss, an adequate postdeprivation remedy is of no consequence, and we focus solely on the process afforded by the established procedure." *Clark v. Kan. City Miss. Sch. Dist.*, 375 F.3d 698, 702 (8th Cir. 2004). Therefore, having already determined that the initial forfeiture of Hopkins' vehicle complied with due process despite the lack of predeprivation notice and hearing, the Court will not reexamine that determination based on the adequacy or inadequacy of postdeprivation remedies.

Finally, to be clear, it is indeed possible that Hopkins has viable due process claims with respect to both the timing and adequacy of the Minnesota vehicle forfeiture statute's postdeprivation remedies. Hopkins' complaint raises potential due process

---

[10] The Court also notes that with respect to Minnesota's vehicle forfeiture statute, the Eighth Circuit has held that constitutional challenges to the available postdeprivation remedies can be raised in the state forfeiture proceedings. *See Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1153 (8th Cir. 2012) (explaining that the plaintiff "had a full and fair opportunity to litigate her constitutional claims during the state court action" because "Minnesota courts routinely hear constitutional challenges in forfeiture proceedings" (internal quotation marks omitted)). Therefore, if Hopkins chooses to pursue a judicial forfeiture determination in state court she should raise her constitutional challenges to the forfeiture statute in that forum, or it is possible a later court would determine she is barred from bringing those challenges. *Id.*

concerns based upon the nearly two-year delay between the seizure of her Vehicle and the possible judicial forfeiture determination. *See United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in U.S. Currency*, 461 U.S. 555, 562-64 (1983) (considering the narrow issue of whether a delay in holding a forfeiture proceeding violated due process by weighing four factors: the length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant); *see also Coleman v. Watt*, 40 F.3d 255, 261 (8th Cir. 1994) (finding that a seven-day delay between impoundment of a vehicle and a hearing to adjudicate the validity of the impoundment violated due process).   Relatedly, Hopkins' complaint raises issues regarding whether the forfeiture proceeding itself is an adequate postdeprivation remedy, or whether an earlier probable cause proceeding was required. *See Krimstock v. Kelly*, 306 F.3d 40, 67 (2d Cir. 2002) (determining that due process required a prompt postseizure, prejudgment hearing to determine whether the city was likely to succeed on the merits of the forfeiture action).   Therefore, the Court dismisses Hopkins' procedural due process claims based on the adequacy and timeliness of the postdeprivation proceedings provided by Minnesota's vehicle forfeiture statute based solely on the Eighth Circuit's requirement that a plaintiff exhaust her state postdeprivation remedies before bringing a Section 1983 claim, not because the Court has concluded that the vehicle forfeiture statute provides constitutionally adequate postdeprivation remedies.

### B.   Fourth Amendment

Hopkins also challenges the seizure of her vehicle under the Fourth Amendment, which protects the "right of the people to be secure in their persons, houses, papers and

effects, against unreasonable searches and seizures." U.S. Const., amend. IV. Hopkins

does not challenge the reasonableness of the initial traffic stop, (*see* Compl. ¶ 7 n.2.), nor

does she challenge the validity of her arrest. And the Court has identified no

constitutional issues with respect to those aspects of the case. Because Hopkins' arrest

was lawful, the initial seizure of her vehicle, incident to that arrest, was constitutional.

*Walters v. Wolf*, 660 F.3d 307, 314 (8th Cir. 2011) ("The initial deprivation – the seizure

of Walter's handgun and ammunition incident to arrest – was a valid deprivation."); *see*

*also United States v. Story*, 463 F.2d 326, 328-29 (8th Cir. 1972).[11]  Instead Hopkins

alleges that her Fourth Amendment rights were violated by the "prolonged" seizure of her

vehicle. In essence, Hopkins argues that although the initial seizure of the Vehicle was

reasonable, the City's continued possession of the Vehicle became unreasonable at some

point following her arrest, and therefore violated the Fourth Amendment.

Although the Eighth Circuit has analyzed the government's continued possession

of property under the Due Process Clause, not the Fourth Amendment, *see Walters*, 660

F.3d at 314-15 (analyzing the city's refusal to return validly seized property under the

Due Process Clause), it has not squarely decided the question presented by this case –

whether the City's continued retention of Hopkins' vehicle after its initial,

constitutionally valid seizure, is separately actionable as a Fourth Amendment violation.

All circuit courts that have squarely addressed this question have relied upon the text,

---

[11] The validity of the initial seizure also lends support to the Court's conclusion that no preseizure notice or hearing was required to satisfy due process, because "[w]hen seizing property for criminal investigatory purposes, compliance with the Fourth Amendment satisfies pre-deprivation procedural due process as well." *PPS, Inc. v. Faulkner Cnty., Ark.*, 630 F.3d 1098, 1107 (8th Cir. 2011) (internal quotation marks omitted).

history, and judicial interpretations of the Fourth Amendment, to hold that continued retention of property potentially implicates due process and not the Fourth Amendment. *See Lee v. City of Chicago*, 330 F.3d 456, 466 (7th Cir. 2003) ("Once an individual has been meaningfully dispossessed, the seizure of property is complete, and once justified by probable cause, the seizure is reasonable.  The [Fourth A]mendment then cannot be invoked by the dispossessed owner to regain his property."); *see also Shaul v. Cherry Valley-Springfield Cent. Sch. Dist.*, 363 F.3d 177, 187 (2d Cir. 2004); *Fox v. Van Oosterum*, 176 F.3d 342, 350-51 (6th Cir. 1999).  *But cf. Presley v. City of Charlottesville*, 464 F.3d 480, 489 (4th Cir. 2006) (holding that a Fourth Amendment claim could be asserted based on continued trespasses over plaintiff's real property).  Additionally, courts distinguishing between initial seizures and continued possession for purposes of the Fourth Amendment have cited practical concerns with applying the Fourth Amendment reasonableness inquiry to any prolonged possession of seized property and have instead held that wrongful retentions of lawfully seized property are properly challenged under the Due Process Clauses which "can better aid a court in balancing the competing interests at stake."   *Lee*, 330 F.3d at 466; *see also Shaul*, 363 F.3d at 187; *Fox*, 176 F.3d at 350-51.  The Court finds the reasoning of these courts persuasive and consistent with the Eighth Circuit's approach to the question of wrongful retention in *Walters*.  Accordingly, the Court concludes that Hopkins' claim regarding the City's prolonged retention of the Vehicle does not raise a cognizable Fourth Amendment claim, and will dismiss this claim.

## IV.   MINNESOTA CONSTITUTIONAL CLAIMS

Hopkins' complaint also alleges that the City's seizure and retention of her vehicle violated her due process rights and right to be free from unreasonable seizures under the Minnesota Constitution, respectively, Article I, Section 7 and Article I, Section 10. Minnesota does not recognize a private cause of action for damages based on violations of the Minnesota Constitution.  *See, e.g.*, *Mlnarik v. City of Minnetrista*, No. A09-910, 2010 WL 346402, at *1 (Minn. Ct. App. Feb. 2, 2010) ("There is no private cause of action for violations of the Minnesota Constitution." (internal quotation marks omitted)). Furthermore, Hopkins did not respond to the City's motion to dismiss her claims arising under the Minnesota Constitution, and conceded at oral argument that the claims should be dismissed.  Accordingly, the Court will dismiss Hopkins' claims under the Minnesota Constitution.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss [Docket No. 16] is **GRANTED** as follows:

1.      Plaintiff's Due Process Claim (Count I), to the extent it is based on lack of predeprivation process is **DISMISSED with prejudice**, and to the extent it is based on inadequate postdeprivation process is **DISMISSED without prejudice**.

2.      Plaintiff's Fourth Amendment Claim (Count III) and claims under the

Minnesota Constitution (Counts II and IV) are **DISMISSED with prejudice**


       **LET JUDGMENT BE ENTERED ACCORDINGLY.**


DATED:   September 25, 2013                    ____s/ John R. Tunheim____
at Minneapolis, Minnesota.                        JOHN R. TUNHEIM
                                                United States District Judge